UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KARLA J.[1] , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:20-CV-1051-MGG |
| | ) |
| KILOLO KIJAKAZI[2], Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Karla J. ("Ms. J.") seeks judicial review of the Social Security Commissioner's decision denying Ms. J.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 7]. For the reasons discussed below, the Court **REMANDS** the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Ms. J. filed an application for DIB and SSI on August 8, 2018, alleging a disability onset date of February 1, 2016.  Ms. J.'s application was denied both initially on February 27, 2019, and upon reconsideration on June 4, 2019.  Following a hearing on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.
[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

March 10, 2020, an Administrative Law Judge ("ALJ") issued a decision on March 27, 2020, which affirmed the Social Security Administration's denial of benefits. The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel declined review on October 26, 2020. [DE 14 at 6]. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. §§ 404.981, 416.1481.

Ms. J. timely sought judicial review of the Commissioner's decision on October 28, 2020. Ms. J. filed her opening brief on November 1, 2021, and the Commissioner filed her Memorandum in Support of Decision on December 9, 2021. This matter became ripe on December 23, 2021, when Ms. J. filed her reply brief.

## II.  APPLICABLE STANDARDS

### A.  Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings

in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his RFC; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920[3]. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B. Standard of Review

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir.

---

[3] Regulations governing applications for DIB and SSI are nearly identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416, respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biesek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Building a logical bridge requires the ALJ to "confront the evidence in [the plaintiff's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004)). Likewise, the ALJ cannot "cherry-pick" facts from the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Furthermore, an ALJ may not disregard a line of evidence that is

contrary to her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the ALJ fails in her responsibility to build a logical bridge between the evidence and her conclusions, the case must be remanded. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Where the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Conversely, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III. ANALYSIS

#### A. The ALJ's Decision

Ms. J.'s hearing before an ALJ on her applications for DIB and SSI occurred on March 10, 2020, in Valparaiso, Indiana. On March 27, 2020, the ALJ issued his written decision finding that Ms. J. was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. J. had not engaged in substantial gainful activity since February 1, 2016. [DE 14 at 22].

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Ms. J. suffers from the

5

severe impairments of asthma, chronic obstructive pulmonary disease ("COPD"), seizure disorder, obesity, degenerative disk disease of the lumbar spine, anxiety disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), and schizoaffective disorder [*Id.*]. These impairments are considered "severe" because they significantly limit Ms. J.'s ability to perform basic work activities [*Id.*]. *See* 20 C.F.R. §§ 404.1520(c).

Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that that Ms. J. had the following non-severe medically determinable impairments: headaches, obstructive sleep apnea ("OSA"), and edema [*Id.* at 23].

At Step Three, the ALJ found that none of Ms. J.'s severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [*Id.*]. Specifically, the ALJ found that Ms. J. failed to meet the listing for disorder of the spine, chronic respiratory disorders, asthma, or epilepsy [*Id.*]. In support of these findings, the ALJ found that Ms. J.'s pulmonary function tests are not at listing level and that she did not have the requisite amount of asthma exacerbations [*Id.*]. During her hospitalization in September 2019, the records reflected that Ms. J. was not compliant with her prescribed medication and continued to smoke [*Id.*].

Likewise, the ALJ found the severity of Ms. J.'s mental impairments did not meet or equal the criteria under SSR 12.03, 12.04, 12.06, and 12.15 [*Id.* at 24]. However, in analyzing the Part B criteria, the ALJ found that Ms. J.'s mental impairments cause moderate limitations in understanding, remembering, and applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and moderate limitations in adapting or managing oneself [*Id.*]. The ALJ also found that Ms. J.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and that neither the "paragraph B" nor the "paragraph C" were satisfied [*Id.*].

At the Step Four analysis, the ALJ considered Ms. J.'s residual functional capacity ("RFC"). A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that the individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Ms. J. has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations:

> [C]laimant can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl…[and] can occasionally work in extreme cold; extreme heat; humidity and wetness; and fumes, odors,

7

> dust, and pulmonary irritants…[C]laimant can never climb ladders, ropes or scaffolds…can never work at unprotected heights or around dangerous machinery with moving mechanical parts…[and] can never operate a motor vehicle as part of her work-related duties…[C]laimant is limited to simple work-related decisions; and simple, routine tasks with no assembly line work or strictly enforced daily production quotas…[C]laimant can occasionally interact with the general public, coworkers, and supervisors…[C]laimant must be allowed to shift positions between sitting and standing for 1-2 minutes at a time after 60 minutes while remaining on task…[C]laimant must use a portable oxygen tank.

[*Id.* at 25].

Ms. J. had prior work experience as a cashier, unskilled/light (DOT #211.462-010) and as a stock clerk, semi-skilled/heavy (DOT #299.367-014). However, based on the ALJ's determination of her RFC, the ALJ found that Ms. J. was unable to perform past relevant work as actually or general performed [*Id.*]. Accordingly, the ALJ moved on to last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in substantial numbers. 42 U.S.C. § 423(d)(2)(A). In this matter, the ALJ asked a vocational expert ("VE") to testify regarding which occupations, if any, Ms. J. can perform. *See* S.S.R. 83-12. Typically, VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified three separate jobs that Ms. J. could still perform—final assembler (DOT #713.687-018), eyewear polisher (DOT #713.684-038), and addresser (DOT #209.587-010) —which, respectively,

have 8,280 jobs, 9,090 jobs, and 7,380 jobs in the national economy [Id. at 68]. The ALJ inquired about what impact of Ms. J. having to wear an oxygen tank would have on the total available jobs, and the VE replied that the available jobs would be reduced by ten percent[4] [*Id.* at 70]. As such, the VE testified that there was a total of 22,275[5] jobs that Ms. J. could perform in the national economy.

Concluding that Ms. J. could make an adjustment to other work that existed in substantial numbers, the ALJ determined that Ms. J. was not under a disability, as defined in the Act, from her alleged onset date through the date of ALJ's decision on May 13, 2020. [*Id.* at 29]. However, in his decision, the ALJ accepted the VE's testimony about the total number of jobs in the national economy – 24,750 – without mentioning or accounting for the VE's testimony about the reduced number of jobs available to a person wearing an oxygen tank [*Id.* 13].

**B.     Issues for Review**

In her opening brief, Ms. J. argued that remand is required because (1) the vocational evidence does not meet the Commissioner's burden at Step Five, and even if the identified jobs existed as the VE testified, the numbers are too small to be significant; (2) the ALJ failed to properly consider and explain certain medical opinion evidence; and (3) the ALJ erred by failing to consider the updated pulmonary function testing [DE 20 at 11-17].

---

[4] The VE noted that his testimony about the impact of the oxygen tank was based on his 37 years of experience and not on the DOT [DE 14 at 71].
[5] Adding 8,280, 9,090, and 7,380 totals 24,750 jobs. Reducing that amount by ten percent would result in 22,275 available jobs in the national economy.

In the Commissioner's Response of December 9, 2021, she contends that substantial evidence in the record supports the ALJ's decision [DE 21 at 3]. The Commissioner asserts that the Court should affirm the ALJ's determination that Ms. J. could perform representative sedentary jobs that existed in significant numbers in the national economy [*Id.*]. Likewise, the Commissioner contends that the ALJ properly evaluated certain medical opinion evidence and its impact on Ms. J.'s RFC [*Id.*]. In her reply, Ms. J. disagrees with the Commissioner's analysis and requests that the Court reverse the final agency decision and remand the matter for further proceedings [DE 22 at 3].

Finding that the ALJ did not cite substantial evidence in his step five determination that Ms. J. could make a successful adjustment to other work that exists in significant numbers in the national economy, remand is appropriate.

**C.      Discussion**

Ms. J. contends that the record warrants remand because (1) the total number of jobs available to Ms. J. based upon the ALJs RFC—24,750 nationally – does not constitute a significant number of jobs to satisfy the Commissioner's burden at Step Five, (2) the ALJ failed to properly assess the medical opinion in accordance with the prevailing rules and regulations; and (3) the ALJ failed to develop the record and obtain the Plaintiff's updated pulmonary function testing results [DE 20 at 2].

As an initial matter, Ms. J. contends that the vocational evidence relied upon by the ALJ fails to show that Ms. J. can perform a significant number of jobs as a matter of law. Here, the VE identified three occupations that Ms. J. could still perform based upon

her RFC— final assembler, eyewear polisher, and addresser —which collectively have 24,750 jobs in the nation but only 22,275 jobs when considering those available to a person wearing an oxygen mask. Moreover, in her reply brief, Ms. J. contends that the job of addresser[6] is "antiquated." *See*, *Pamela H. v. Kijakazi*, No. 5:20-cv-00304, 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22, 2021). As the court in *Pamela H.* noted, "the DOT definitions cited by the vocational expert are comically out of date." *Id.* at *6. Clearly, the position of "addresser" is antiquated, if not obsolete – "the definition of addresser refers to literally addressing items for mailing by hand or typewriter, which fails to account for minor recent inventions such as the computer and the internet." *Id.* at *6. At the hearing, the VE did not discuss the number of addresser jobs that actually exist based on the changes in technology.[7]

The Commissioner contends that the Seventh Circuit[8] has found that the Commissioner met her burden at Step Five when an ALJ identified 24,750 jobs that a claimant could perform. *See Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021) (stating that "the ALJ still found that enough jobs—30,000—are available to [the claimant] to allow her to work"). The Commissioner further supports her position by citing to *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009), which found

---

[6] DOT 209.587-010 defines the job responsibilities of an "addresser (clerical)" as "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing [and m]ay sort mail.".

[7] While a more modernized version of the addresser job may exist in the national economy, it may not be defined as unskilled.

[8] The Commissioner urges this Court to follow the precedent of the Third, Sixth, and Eighth Circuits and determine that 24,750 jobs in the national economy constitute a significant number. *See*, *Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3rd Cir. 2017) (18,000 jobs); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000). This Court declines to follow the Commissioner's suggestion and will rely on the precedent of the Seventh Circuit.

that 4,000 jobs in the Milwaukee area was significant, as well as to *Lawrence v. Astrue*, 337 F. App'x 579, 583 (7th Cir. 2009) (finding that 15,000 jobs was significant and referencing precedent finding that even 1,400 jobs can qualify as significant).

Although Ms. J. distinguishes the Commissioner's precedent indicating that the history of these cases suggests that the court meant regional, rather national, numbers, Ms. J. also concedes that courts in the Seventh Circuit have reached differing conclusions as to how many jobs in the national economy are considered a significant number. *See, e.g.*, *James A. v. Saul*, 471 F. Supp. 3d 856, 859 (N.D. Ind. 2020) (finding that 14,500 jobs was not significant in number); *see also Sally S. v. Berryhill*, No. 2:18-cv-480, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019) (finding 120,350 jobs in the national economy was not sufficient); *cf. Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (finding that jobs totaling 40,000 in the national economy was sufficient). Significant to this court's analysis is *Gass v. Kijakazi*, No. 1:19-cv-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021). In *Gass,* the ALJ had determined that the claimant was not disabled because he could still perform the jobs of addresser (29,000 jobs nationally), final assembler (50,000 jobs nationally), and table worker (24,000 jobs nationally). *Id.* As the claimant in *Gass* contended that the addresser and final assembler jobs were obsolete, the Court then considered whether the 24,000 table worker jobs – standing along – met the Commissioner's burden at Step Five. As part of this analysis, the court summarized the range of conclusions reached by courts in the Seventh Circuit. *Id.* First, *Gass* referenced courts holding that 14,500 jobs, 20,000 jobs, 27,000 jobs, or even 120,350 jobs available in the national economy were *not* significant.

*See id.* (internal citations omitted). On the other hand, *Gass* also discussed courts finding that jobs existing in numbers ranging from 17,700 to 53,200 in the national economy *as* significant. *See id.* (internal citations omitted). After discussing these differing conclusions, the court in *Gass* remanded for further administrative proceedings so that "the ALJ will have an opportunity to reconsider whether a significant number of jobs exist in the national economy for the [claimant]." *Id.* at *9.

Here, based on the parties' arguments and the record before the Court, the Court cannot find that 22,275 jobs are insignificant as a matter of law.[9] However, "the governing standard is not whether a jobs number falls above or below a set numerical value, but whether the substantial evidence supports the VE's testimony that significant jobs exist." *Douglas G. v. Kijakazi*, No. 19 CV 7033, 2021 WL 3849637, at *4 (N.D. Ill. Aug. 27, 2021). Specifically, Ms. J.'s arguments of obsolescence concerns with the identified occupations as well as her limitations due to her oxygen tank, suggests that other factual disputes exist regarding these numbers, which the Court cannot resolve through its limited review. *Young*, 362 F.3d at 1001.

Accordingly, as there is no defined threshold regarding what constitutes a significant number of jobs at Step Five, remand for further administrative proceedings

---

[9] Even accepting the Plaintiff's assertion that the addresser job is obsolete and not available in the national economy, the Court would not be able to determine, as a matter of law, that 14,895 jobs were insignificant. However, it should be noted that the court in *James A.*, 471 F. Supp. 3d at 859, found that 14,500 were not a significant number of jobs in the national economy. See also, *John C. v. Saul*, 4:19-CV-041111-SLD-JEH, 2021 WL 794790 at *5 (C.D. Ill. Mar. 2, 2021) (observing that there is no binding authority that 20,000 is significant); cf. *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *17 (N.D. Ill. Dec. 19, 2019) (finding that 40,000 jobs nationally was sufficient to support the ALJ's alternative Step Five analysis).

is appropriate. This approach is consistent with other courts facing similar Step Five arguments when other factual disputes remain. *See, e.g., Sally S.,* 2019 WL 3335033, at *11 (finding that 120,350 jobs in the national economy was not a significant number and remanding for further proceedings); *Gass,* 2021 WL 5446734, at *8 (discussed above); *Kordeck v. Colvin*, No. 2:14-cv-431-JEM, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (discussing obsolescence concerns with jobs identified for the claimant as part of its remand for further administrative proceedings).

Indeed, it is likely that new VE testimony will be solicited (including the impact that wearing an oxygen tank has on available jobs). Accordingly, in further acknowledgement of Ms. J.'s obsolescence concerns, the Court recommends that on remand, the ALJ also discern whether the jobs identified by the VE still exist in the national economy, and if so, in what numbers. *See Kordeck*, 2016 WL 675814, at *9.

Finally, Ms. J. has raised other arguments that the ALJ's RFC determination is not supported by substantial evidence for failure to properly weigh certain medical evidence and failed to consider certain medical evidence about Ms. J.'s worsening pulmonary condition. Ms. J. is free to raise these issues on remand.

**IV.　CONCLUSION**

Based on the foregoing, the decision of the ALJ is **REVERSED** and the instant action **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 26th day of September 2022.

                                                                                   <u>s/Michael G. Gotsch, Sr.</u>
                                                                                    Michael G. Gotsch, Sr.
                                                                                    United States Magistrate Judge